# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-858

TINA LYNETTE WATKINS

VERSUS

DR. RICHARD BARRY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 94-596
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## OSWALD A. DECUIR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Michael G. Sullivan, Judges.

**AFFIRMED.**

**R. Ray Orrill, Jr.**
**Leslie A. Cordell**
**W. Christopher Beary**
**Orrill, Cordell & Beary, L.L.C.**
**412 West University Avenue, Suite 206**
**Lafayette, LA 70506**
**(337) 237-8200**
**Counsel for Plaintiff/Appellee:**
  **Tina Lynette Watkins**

**Michael Keith Prudhomme**
**Lundy & Davis**
**P. O. Box 3010**
**Lake Charles, LA 70602**
**(337) 439-0707**
**Counsel for Intervenor/Appellant:**
  **Louisiana Patients' Compensation Fund**

**Milo Nickel, Jr.**
**Nadia de la Houssaye**
**David B. Gooch**
**The Dill Firm, A.P.L.C.**
**P.O. Box 3324**
**Lafayette, LA 70502-3324**
**Counsel for Intervenor/Appellant:**
      **Louisiana Patients' Compensation Fund**

**DECUIR, Judge.**

The Louisiana Patients' Compensation Fund pursued an appeal of certain post-judgment rulings in this medical malpractice case. Finding no merit to the position advocated by the PCF, we affirm the judgment rendered in favor of the plaintiff, Tina Lynette Watkins.

In 1990, Watkins gave birth to a son, Dustin P. Watkins. Shortly after his birth, doctors determined the child had suffered a stroke *in utero*, which caused serious and permanent debilitating injuries. The plaintiff asserted a medical malpractice claim against the treating obstetrician, Dr. Richard J. Barry, and Lake Charles Memorial Hospital. After trial on the merits, judgment was rendered against Dr. Barry and the PCF on December 8, 2003, for the maximum amount of medical malpractice damages, $500,000.00, plus accrued medical and other expenses in the amount of $437,193.08. Future medical and custodial care expenses were also awarded and, in accordance with La.R.S. 40:1299.43(A)(2), were specifically itemized and quantified at over $6,000,000.00, including custodial care for twelve hours a day until Dustin's eighteenth birthday and twenty-four hour a day for the remainder of his life. Dr. Barry paid his portion of the judgment. On appeal by the PCF, the judgment was affirmed as amended so as to clarify the computation of judicial interest, and supervisory writs were denied by the supreme court. *See Watkins v. Lake Charles Mem'l Hosp.,* 04-355 (La.App. 3 Cir. 12/15/04), 896 So.2d 130, *writ denied,* 05-0145 (La. 4/8/05), 898 So.2d 1279.

Immediately after the judgment became final, the plaintiff made a demand for payment. In June of 2005, the PCF paid a portion of the judgment; the payment included general damages as well as accrued medical and custodial care expenses incurred up to November 19, 2003, the date of trial. The following month, the plaintiff again made demand for payment of expenses incurred since the date of trial.

The PCF notified the plaintiff that she would have to forward a signed W-9 taxpayer identification form and notes reflecting the hours worked and duties performed by the custodial care provider. The plaintiff responded with a W-9 form in the name of the Dustin P. Watkins Special Needs Trust and an affidavit stating that Dustin is still alive and that his disabilities have not diminished since the date of trial. The plaintiff requested that future custodial care payments be made to the Special Needs Trust, and she asserted that a record of the hours and duties of the custodial care provider was not required by law or by the judgment rendered in her favor.

Six weeks later, in September of 2005, the plaintiff filed the instant rule alleging the PCF had arbitrarily refused to pay custodial care expenses. She also requested an order that further payments be made to the Special Needs Trust. The trial court ruled in the plaintiff's favor. The PCF's numerous exceptions were overruled, and it was ordered to make quarterly advanced payments of custodial care expenses to the trust, at the hourly rate specified in the original 2003 judgment, upon receipt of certification that there has been no change in Dustin's condition in the previous thirty days.

In this appeal, the PCF has presented three assignments of error:

1.   The trial court erred in ordering the PCF to pay future medical care payments prior to the service being provided.

2.   The trial court erred by holding that a plaintiff who submits a claim for reimbursement of future medicals pursuant to La.R.S. 40:1299.43 need not provide any evidence that the services were actually rendered.

3.   The trial court erred in ordering the PCF to pay custodial care payments to a Special Needs Trust instead of the actual care provider.

After due consideration of the provisions of the Medical Malpractice Act, La.R.S. 40:1299.41 et seq., and relevant jurisprudence applicable to this case, we find no merit to the arguments advanced by the PCF and affirm the ruling of the trial court.

By requiring the plaintiff to submit verification of custodial care expenses, the PCF ignores the mandate of the 2003 judgment. The judgment established both the need and amount of future expenses. While the judgment is not made executory until a claim has been submitted to the PCF, the PCF, in administering the claim, does not have authority to alter the terms of the final judgment in the plaintiff's favor. Disputes between the plaintiff and the PCF are to be resolved in the district court from which the original judgment issued. La.R.S. 40:1299.43(E)(1). In fact, in a dispute between the PCF and a claimant over the validity of expenses, the PCF has the burden of proof. *See Bartee v. Children's Clinic of S.W. La.,* 05-583 (La.App. 3 Cir. 8/17/05), 910 So.2d 470, *writ denied,* 05-2465 (La. 3/24/06), 925 So.2d 1230.

The PCF's obligation to pay future medical expenses is set forth in La.R.S. 40:1299.43(C):

> Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits that will be incurred after the date of the response to the special interrogatory by the jury or the court's finding or a settlement is reached between a patient and the patient's compensation fund in which the provision of medical care and related benefits that will be incurred after the date of settlement is agreed upon and continuing as long as medical or surgical attention is reasonably necessary, the patient may make a claim to the patient's compensation fund through the board for all future medical care and related benefits directly or indirectly made necessary by the health care provider's malpractice unless the patient refuses to allow them to be furnished.

In an effort to enforce the PCF's statutory obligation to the plaintiff, the trial court fashioned a plan for the quarterly submission of verified claims, allowing for timely payment by the PCF and no out-of-pocket costs to the plaintiff.

The PCF has refused to implement the trial court's order and attempts to quibble over the word "incurred." The PCF contends that medical and custodial care expenses are payable to a plaintiff only after the service has been provided, a bill has been received by the plaintiff and submitted to the PCF, and the PCF has reviewed it within thirty days of receipt. By contrast, the trial court ordered the PCF to make prospective payments for custodial care at the beginning of each quarter in which custodial care would be required. In other words, the court required the PCF to pay up front for care that would be needed for the next ninety days. This is no different than purchasing a movie ticket prior to walking into the theater. Quite simply, we find the effects of the PCF's administration, *i.e.,* custodial care workers must wait thirty days to be paid, or catastrophically injured patients must pay out of pocket for custodial care, only to recoup it months later from the PCF, to be unconscionable. The trial court's remedy of a quarterly payment plan upon certification by the plaintiff that the need for care remains, is a practical solution to what can be an administrative nightmare.

In an effort to cast suspicion on the intentions of the plaintiff, the PCF also argues that because the plaintiff is providing the custodial care to her son personally, she is attempting to circumvent tax and Medicaid laws by seeking payment to the Special Needs Trust. This argument is baseless. Federal law provides for the establishment of a special needs trust to provide funding for the care of disabled persons in addition to Medicaid or Social Security disability benefits for which the person may be eligible. 42 U.S.C. § 1396. Payments by the PCF or any private insurer or other entity to such a trust does not constitute participation in a fraud.

Nevertheless, the PCF is not without recourse in the event that abuse occurs or is suspected. Section 1299.43(E)(1) provides that "the district court from which final

judgment issues shall have continuing jurisdiction in cases where medical care and related benefits are determined to be needed by the patient." Section 1299.43(G) allows the PCF to require the plaintiff to submit to periodic examinations by the physician of its choice. These remedies are in addition to the right to appeal, which the PCF exercised fully in this case to no avail. We know of no other defendant so fortunate as to have post-judgment rights of review, as well as the lifetime of the plaintiff, to pay damages, as the PCF.

Regarding the PCF's contention that the trial court erred in requiring it to make payments to the Dustin P. Watkins Special Needs Trust, we find no merit to this argument.

Finding no manifest error in the ruling of the trial court, we affirm. All costs of this appeal are assessed to the PCF.

**AFFIRMED.**