# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-1320


**TINA LYNETTE WATKINS,  ET AL.**

**VERSUS**

**LAKE CHARLES MEMORIAL HOSPITAL, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 94-596
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, James T. Genovese, and John E. Conery, Judges.


**AFFIRMED.**

**Leslie A. Cordell**
**R. Ray Orrill, Jr.**
**W. Christopher Beary**
**Orrill, Cordell & Beary, L.L.C.**
**330 Carondelet Street**
**New Orleans, Louisiana 70130**
**(504) 299-8724**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
        **Tina Lynette Watkins, Individually and on**
        **Behalf of Her Child, Dustin Watkins**

**Nadia Marie de la Houssaye**
**Jones, Walker, Waechter, Poitevent,**
**Carrere &Denegre, L.L.P.**
**Post Office Drawer 3408**
**Lafayette, Louisiana 70502-3408**
**(337) 593-7600**
**COUNSEL FOR INTERVENOR/APPELLANT:**
        **Louisiana Patient's Compensation Fund**

**CONERY, Judge.**

Was the Louisiana Patient's Compensation Fund (PCF) in this particular case required to obtain a judicial ruling modifying the district court judgment prior to discontinuing payments for future medical care and related benefits that the PCF has determined are no longer necessary or actually rendered? The trial court held that it was so required, and, under the limited circumstances of this particular case, we agree.

The PCF also appeals the award of attorney fees and costs, arguing that it had good reason to discontinue payment for twenty-four hour custodial care. We affirm the award of attorney fees and costs.

Tina Lynette Watkins answers the appeal and contests the trial court's ruling which reduced her payments for custodial care from twenty-four hours to six hours a day. She contends that she is "on call" twenty-four hours a day, and, therefore, she should continue to receive the full compensation previously awarded by the trial court. We agree with the trial court's reduction of custodial/attendant care from twenty-four hours per day to six hours per day.

## PROCEDURAL HISTORY AND FACTS

This is the latest in a line of cases dating back to the original case of *Watkins v. Lake Charles Memorial Hospital,* 04-355 (La.App. 3 Cir. 12/15/04), 896 So.2d 130, *writ denied,* 05-145 (La. 4/8/05), 898 So.2d 1279 (*Watkins I*). The judgment in *Watkins I*, based on the malpractice of Dr. Richard Barry, required, among other things, that the PCF begin payments to Tina Lynette Watkins (Mrs. Watkins) for future medical and custodial/attendant care expenses for her son, Dustin P. Watkins. Dustin suffered a stroke *in utero* and has suffered significant medical problems since his birth in December 1990.

In *Watkins I*, the trial court rendered a 2003 judgment defining "future medical care" costs to include custodial/attendant care for Dustin "for twelve hours a day until Dustin's eighteenth birthday and twenty-four hours a day for the remainder of his life." The 2003 judgment also anticipated various future needs such as occupational therapy, speech therapy, ongoing tutoring, respite care, and live-in support for Dustin. On appeal, a panel of this court stated: "Although contained in the judgment, these expenses are not made executory until review and approval by the LPCF or, if denied, upon subsequent order of the court under its continuing jurisdiction. *See* La.R.S. 40:1299.43 (E)(1)." *Watkins I,* 896 So.2d at 135 (footnote omitted).

In 2006, this court affirmed a judgment by the trial court that required advance payments to Mrs. Watkins for custodial/attendant care of Dustin to be deposited into a Special Needs Trust in the name of Dustin Watkins. *Watkins v. Barry*, 06-858 (La.App. 3 Cir. 12/6/06) 946 So.2d 262, *writ denied*, 07-373 (La. 4/27/07), 955 So.2d 686 (*Watkins II*). This court found the advance payment plan was a reasonable way for the PCF to meet its statutory obligations ordered by the trial court under the 2003 judgment affirmed in *Watkins I*.

In *Watkins II*, this court specifically affirmed the trial court's plan ordering the PCF "to make quarterly advanced payments of custodial care expenses to the trust, at the hourly rate specified in the original 2003 judgment, upon receipt of certification that there has been no change in Dustin's condition in the previous thirty days." *Watkins II,* 946 So.2d at 263.

Since the ruling in *Watkins II* in 2006, Mrs. Watkins has submitted quarterly affidavits for Dustin's future custodial/attendant care. She states, in pertinent part, in her affidavits: "1) She is the mother of Dustin P. Watkins; 2) He is still alive and

2

his disabilities and care requirements have not diminished since the trial in this matter."

The PCF paid Mrs. Watkins the prospective quarterly payments of approximately $8,000.00 a month for Dustin's care through May 2011 without question. However, after the submission of the May 2011 affidavit seeking advance payment for Dustin's care for the months of June, July, and August 2011, the PCF learned via Dustin's open-access Facebook account that he was happily married and no longer living with his mother. After verifying the information, the PCF discontinued payments for the future custodial/attendant care to Mrs. Watkins. On June 23, 2011, The PCF requested that Dustin undergo an Independent Medical Examination (IME) in order to assess Dustin's current medical condition and his future custodial/attendant care needs.

In response to the PCF's June 23, 2011 request for an IME, Dustin immediately agreed to the IME and designated Dr. John Willis, a pediatric neurologist associated with Tulane University and Ochsner Hospital and Clinic, to conduct the exam. In the meantime, on August 25, 2011, Mrs. Watkins submitted another affidavit seeking payment for services to be rendered for Dustin's future care from September 2011 through November of 2011. The August 25, 2011 affidavit was the last affidavit submitted to the PCF by Mrs. Watkins.

For reasons not clear in the record, Dr. Willis did not conduct the IME until September 10, 2011. He conducted a complete neurological examination of Dustin and determined that Dustin was neurologically intact and not in need of twenty-four hour custodial/attendant care. Dr. Willis reported that Dustin had no outbursts in the three months preceding the IME. In addition, as shown in his report dated September 27, 2011, Mrs. Watkins admitted to Dr. Willis that she was no longer

3

living with Dustin due to interpersonal conflicts and had not been living with him during that same three month period, June through August 2011. Further, in Dr. Willis's deposition he noted that Mrs. Watkins was "trying to stay away" from Dustin because her presence "seemed to escalate the conflict." Dustin was living with his wife during this time period, and not his mother, and continued to live with his wife without incident through the date of trial.

After receiving the report and conclusions of Dr. Willis and the admission in the medical records by Mrs. Watkins that she was neither living with Dustin nor providing him with twenty-four hour care, the PCF continued to refuse to make the payments requested in the May 2011 affidavit for June through August 2011, and also refused the payments requested in the August 25, 2011 affidavit for services from September through November 2011.

On September 15, 2011, Plaintiffs filed a rule to show cause why the PCF should not be compelled to pay Mrs. Watkins for the twenty-four hour custodial/attendant care of Dustin. In response to the rule, the PCF argued that a change in Dustin's medical condition was evidenced by the neurological examination of Dr. Willis and requested that the trial court reconsider the need and/or amount of time required to provide custodial care to Dustin.

On March 12, 2012, Plaintiffs filed a supplemental rule to show cause to require the PCF to pay the cost of a neurological evaluation and an independent living skills assessment of Dustin that had been conducted by Dr. Michael Chafetz on November 11, 2011, at the request of Plaintiffs.[1]

---

[1] The PCF does not appeal the expert fees and costs associated with the testimony of Dr. Michael Chafetz, as these costs are required by La.R.S. 40:1299.43(J).

On March 13, 2012, Plaintiffs filed a third rule to show cause seeking to increase the rate of compensation to Mrs. Watkins from $10.00 to $18.00 per hour for her custodial/attendant care provided to Dustin. The increase in hourly compensation was deferred to a later date by stipulation of both parties at trial.

On March 26, 2012, the trial court held an evidentiary hearing on the plaintiffs' rules to show cause. By stipulation and oral motion by the PCF, the parties requested that the trial court determine the amount of prospective payments that might be owed to Mrs. Watkins for all past and future custodial/attendant care of Dustin.

After hearing the evidence and reviewing the exhibits, the trial court determined that, based on Dr. Willis's neurological examination and assessment of Dustin, as well as Dr. Michael Chafetz's independent living skills assessment:

> Dustin can now independently take care of most of his basic needs.
>
> . . . .
>
> It is also undisputed that Mrs. Watkins Guidry has not resided with Mr. Watkins since May of 2011. Therefore, it is the opinion of this Court that Mr. Watkins is no longer in need of constant twenty-four hour custodial care.

The trial court then reduced the obligation of the PCF to pay for Dustin's custodial/attendant care from twenty-four to six hours per day, commencing on March 26, 2012, and continuing in accordance with the 2006 ruling.

## ASSIGNMENTS OF ERROR

The PCF appeals the trial court's award of pre-hearing custodial/attendant care from June 1, 2011 through the date of trial, March 26, 2012, plus interest, on the basis that the statutory scheme for payment of future medical expenses does not require trial court approval before the PCF can terminate future benefits the PCF

has determined are not medically necessary, and it should not have to pay for services that have not actually been rendered.

The PCF also appeals the award of attorney fees and costs. The PCF argues that the trial court erred in awarding attorney fees and costs after its specific finding that in May of 2011, Dustin's medical condition had changed, and he no longer required twenty-four hour care, since he no longer resided with his mother, who had not actually rendered any care to Dustin during this time period. The PCF argues it was not unreasonable in failing to pay for services that had not actually been rendered by Mrs. Watkins and were found by the trial court to be no longer medically necessary.

Mrs. Watkins answers the appeal, contending the trial court erred in reducing her payments for custodial care from twenty-four hours to six hours a day. She contends that she is "on call" twenty-four hours a day, and, therefore, she should continue to receive the full compensation previously awarded by the trial court.

LAW AND DISCUSSION

**Standard of Review**

"Appellate review of a question of law is simply a decision as to whether the [trial] court's decision is legally correct or incorrect." *Jim Walter Homes, Inc. v. Jessen,* 98-1685, p. 5 (La.App. 3 Cir. 3/31/99), 732 So.2d 699, 702 (citing *Ducote v. City of Alexandria,* 95–1269 (La.App. 3 Cir. 7/17/96); 677 So.2d 1118). "If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court." *Id.* (citing *Kem Search, Inc. v. Sheffield,* 434 So.2d 1067 (La.1983)). If an appellate court finds that a reversible error of law was made by

6

the trial court, it must review the facts *de novo* and render a judgment on the merits. *Lasha v. Olin Corp.,* 625 So.2d 1002 (La.1993).

Thus, we review the trial court's ruling on the legal issue of the lawfulness of the PCF's termination of benefits to determine whether the trial court's decision was legally correct. If we find an error of law, then we conduct a de novo review of the facts.

**June 1, 2011-March 26, 2012 Payments Plus Interest, Attorney Fees and Costs**

The PCF urges that the case of *Bartee v. Children's Clinic of Southwest La.,* 05-583 (La.App. 3 Cir. 8/17/05), 910 So.2d 470, *writ denied*, 05-2465 (La. 3/24/06), 925 So.2d 1230, controls this issue. The panel in *Bartee* sought to clarify the procedure for both the recipients of future medical payments and for the PCF to follow in resolving a dispute over the amount or necessity of payment of future medical expenses. In its determination of the procedure, the *Bartee* court stated that the statutory language of the Medical Malpractice Act, (MMA), or more specifically La.R.S. 40:1299.43, clearly controlled the procedural requirements for the determination of the payment of future medical benefits.

In *Bartee*, this court discussed the supreme court case of *Kelty v. Brumfield*, 93-1142 (La. 2/25/94), 633 So.2d 1210, and found no conflict between the decision in *Kelty* and the provisions of the MMA. The *Bartee* court stated:

> In other words, a plaintiff must, first, bring the claim for payment to the PCF, which is authorized, in accordance with provisions contained in Section 44 of the MMA, to "evaluate claims, and to pay, settle or reject them, [and] is also vested with full powers to assure the cost-effectiveness of claims adjustment and the fiscal soundness of the PCF." *Kelty,* 633 So.2d at 1218. However, *Kelty* additionally recognized the district court has "continuing jurisdiction" to settle any dispute between the PCF and a plaintiff and to "award attorney fees when the PCF fails to pay timely, id. 43E(2)." *Id.* We find no conflict between *Kelty* and the procedure for filing a claim mandated by the MMA. Under provisions contained in Section 44, as recognized by

*Kelty,* the PCF has the authority to implement any *internal* procedure it deems necessary to effectively and efficiently process a claim. However, the PCF must respond to a plaintiff's request for payment within the *thirty day time limit mandated* by the MMA, and its actions are subject to full review thereafter in the district court under its continuing jurisdiction which attached at the time and place where the malpractice suit was initially filed. La.R.S. 40:1299.43(E)(1). . . . The procedure for obtaining future medical care and related benefits is clearly mandated by La.R.S. 40:1299.43 *et seq.* and supercedes all judicial declarations to the contrary or that are in conflict with the legislative directives found in the noted provisions.

*Id. at* 472-73 (footnote omitted).

The court in *Bartee* further interpreted the provisions of La.R.S. 40:1299.43 and set forth the following procedure for litigants to follow in seeking a determination of how much payment, if any, was due and whether the PCF owed attorney fees for failure to pay future medical and custodial expenses within thirty days:

> Louisiana Revised Statutes 40:1299.43(E)(1) and (2) give the district court continuing jurisdiction over disputes regarding future medical expenses filed before the PCF, including the authority to award attorney's fees if the court finds the PCF fails to pay the claim within thirty days.
>
> . . . .
>
> Under these provisions, while the trier of fact determines both the need and amount of future medicals due, future medical expenses "are not made executory until review and approval by the LPCF or, if denied, upon subsequent order of the court under its continuing jurisdiction." *Watkins,* 896 So.2d at 135. The PCF is required to act upon the claim within thirty days. La.R.S. 40:1299.43(E)(2). If denied, the plaintiff's remedy is to file a Rule to Enforce the Judgment in district court. *See Alexander v. Austin,* 00-00298 (La.App. 3 Cir. 10/4/00), 771 So.2d 719, *writ denied,* 00-3063 (La.1/5/01), 778 So.2d 1141, (the plaintiff filed a motion with the trial court for reimbursement of expenses denied by the PCF), and *Bridgers v. Southwest Louisiana Hospital Association,* 01-0534 (La.App. 3 Cir. 11/7/01), 799 So.2d 1253 *writ denied,* 01-3220 (La.2/8/02), 809 So.2d 138, (the plaintiff filed a rule to enforce judgment in district court). The PCF is required to come forward with the reasons for the denial or modification. The burden of proof is on the Oversight Board. If the trial court finds the PCF unreasonably

failed to pay the claim timely, La.R.S. 40:1299.43(E)(2) authorizes the award of attorney's fees.

*Id.* at 474-75 (footnote omitted). Thus, the structure of the requirements for litigating future medical payments between the PCF and a party requiring or receiving future medical payments has been defined by this circuit.

In *Bartee*, this court made it quite clear that the statutory scheme of the MMA controls over the applicable provisions of the Louisiana Administrative Code and the Louisiana Administrative Procedures Act. The statutory scheme in La.R.S 40:1299.43, as described in great detail in *Bartee,* does not require the PCF to file a motion to modify judgment with the trial court prior to terminating or modifying future medical or custodial benefits. It does require the PCF to periodically determine if the same medical condition which requires medical payments still exists.

In this case, the PCF followed the procedures required in La.R.S. 40:1299.43(G). After receiving verified information that Dustin was no longer residing with his mother and no longer in need of the twenty-four hour custodial/attendant care, the PCF requested an IME for Dustin on June 23, 2011.

However, an IME was not conducted until September 10, 2011. The report of Dr. Willis, dated September 27, 2011, supported the PCF's position that Dustin's medical condition had changed such that there was no longer any need for twenty-four a day custodial care. However, no prior thirty-day notice had been provided to Mrs. Watkins that the PCF would discontinue benefits, and, in fact, "future" benefits had not been paid since May 2011.

On September 15, 2011, Plaintiffs filed the first rule to show cause, seeking to have the payments reinstated pursuant to La.R.S. 40:1299.43(E)(1). A hearing

9

was held six months later, on March 26, 2012, on the rule for reinstatement of the custodial/attendant payments, along with a determination of the payment, if any, allegedly owed to Mrs. Watkins for the future custodial/attendant care for Dustin.

The trial court in its Reasons for Judgment issued July 11, 2012, stated:

> In the 2006 judgment[, *Watkins II*,] after Plaintiffs' claim for custodial care expenses was denied by the PCF, this Court ordered the PCF to make quarterly advanced payments of custodial care expenses upon receipt of certification that there has been no change in Dustin's condition in the previous thirty days.

The trial court then found that Mrs. Watkins had complied with the requirements of the 2006 judgment and submitted certified affidavits "stating that there had been no change in Dustin's condition in the previous thirty days." The trial court then determined, "Despite the mandate of the 2006 judgment, the PCF made the unilateral determination to deny payment of these claims for custodial care expenses."

The trial court then discussed the provisions of La.R.S. 40:1299.43(C), which provides the procedure for a patient obtaining future medical care, and La.R.S. 40:1299.43 (E)(2), which allows the award of reasonable attorney fees "if the court finds the PCF unreasonably fails to pay for medical care within thirty days after the submission of a claim for payment of such benefits."

Ordinarily, pursuant to *Bartee*, when a claim is initially made to the PCF by a patient and is denied by the PCF, a rule to show cause is filed by the plaintiff in the district court for a ruling. In *Watkins II,* however, the 2006 judgment of the trial court specifically outlined the payment procedure for future benefits, which

10

ruling was affirmed by a panel of this court making the final judgment in *Watkins II* the law of the case.[2]

The trial court in this case noted specifically in its reasons for ruling:

> The PCF willfully violated the mandate of the 2006 judgment by making the unilateral determination to cease the custodial care payments, despite receiving certification from Mrs. Watkins Guidry that there had been no change in Dustin's condition.
>
> The PCF contends that Mrs. Watkins certification to the PCF misrepresented the actual condition and care provided to Dustin Watkins. However, the fact that a misrepresentation or change in condition has occurred or is suspected does not allow the PCF to make the unilateral determination to cease payment.

Further, the trial court noted: "The PCF is not without recourse in the event that abuse occurs or is suspected." The PCF could have petitioned the trial court for a determination of the necessity for the payment of future custodial/attendant benefits for Dustin, *prior to termination of the requested benefits*, and could have sought a court-ordered IME when it first learned of the change in circumstances evidenced by the information obtained on Facebook.

Under the facts of this case, and considering the detailed procedure ordered in *Watkins II*, which is now the law of the case, the trial court correctly ruled:

> The PCF also contends that there is no law that requires the PCF to file any judicial pleading at the district court prior to reviewing an illegitimate request for payment. This Court agrees. The PCF can *review* at any time any claim it suspects to be illegitimate. However, prior to discontinuing payments for future medical care and related benefits*, i.e. custodial care*, it must first obtain a judicial ruling modifying the prior judgment.

---

[2] *Schultz v. Doyle*, 98-1113 p. 5 (La.App. 3 Cir. 2/3/99), 727 So.2d 691, 693, *writ denied*, 99-994 (La. 5/28/99), 743 So.2d 670 (quoting *Petition of Sewerage & Water Bd. of New Orleans*, 278 So.2d 81, 83 (La.1973)) defined the applicable law of the case as follows: "The law of the case principle relates to. . . (c) the rule that an appellate court will not ordinarily reconsider its own rulings of law on a subsequent appeal in the same case."

The PCF has no legal right to substitute its own opinion for the rulings of this Court.

In awarding $72,000.00, plus interest, along with costs and attorney fees to Mrs. Watkins, the trial court correctly found the award was due from June 1, 2011, the date of the unilateral termination by the PCF, until the date of the hearing on March 26, 2012.

The Court correctly held, "Once Mrs. Watkins Guidry initiated this proceeding and the PCF continued to deny payment, the claims were effectively preserved until court determination."

Therefore we affirm the trial court's award for "twenty-four (24) hour custodial/attendant care from June 1, 2011, through March 26, 2012, for an amount totaling $72,000.00 (300 days x 24 hours per day x $10.00 per hour)[,] plus interest from the date of judicial demand." We also affirm the trial court's determination that the termination of custodial/attendant care benefits was unreasonable due to the failure of the PFC to first seek the trial court's approval, and, therefore, the attorney fees and costs were correctly awarded by the trial court based on La.R.S. 40:1299.43 (E)(2).

**Reduction of Custodial/attendant Care**

"[A]ppellate jurisdiction of a court of appeal extends to law and facts." La.Const. art. 5, § 10(B). Our supreme court, in *Ryan v. Zurich American Ins. Co.*, 07-2312, p. 7 (La. 7/1/08), 988 So.2d 214, 219, reiterated the standard of review for fact findings as follows:

> The jury's determination of the amount, if any, of an award of damages . . . is a finding of fact. The Civil Code provides that "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." La. C.C. art. 2324.1.

The standard of review of a trial court's findings is well-settled.

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Our supreme court set forth a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Cole v. Allstate Ins. Co.,* 07-1046 (La.App. 3 Cir. 6/05/08), 987 So.2d 310, 312 *writ denied*, 08-1463 (La. 10/31/08), 994 So.2d 535 (citing *Earls v. McDowell*, 07-17 (La.App. 5 Cir. 5/15/07), 960 So.2d 242).

In answering the appeal, Mrs. Watkins contests the reduction of her payments for the custodial/attendant care of Dustin from twenty-four hours to six hours per day on the basis that she is "on call" twenty-four hours and, therefore, should be compensated for this time. This is a question of fact. The PCF did not appeal the trial court's determination on this issue. The standard of review to be used by this court on this issue is the clearly wrong/manifest error standard.

In its Reasons for Judgment rendered on July 11, 2012, the trial court determined factually, based on all the evidence, that Dustin was no longer in need of twenty-four hour custodial/attendant care. The court stated:

> It is clear that Dustin can now independently take care of most of his basic needs. Dustin is able to care for his basic grooming, cooking, cleaning, and transportation needs, as supported by the "independent living skills" assessment of Dr. Chafetz and by the neurological assessment of Dr. Willis.
>
> It is also undisputed that Mrs. Watkins Guidry has not resided with Mr. Watkins since May of 2011. Therefore, it is the opinion of this Court that Mr. Watkins is no longer in need of constant twenty-four hour custodial care.

The trial court further found:

It is apparent that through Mrs. Watkins Guidry's past efforts, Dustin has maximized his independence to date. At some point that may be at 100 percent, but that level has not yet been achieved. Currently, the care that Mrs. Watkins Guidry provides is adequate, appropriate and in the best interest of Dustin.

This Court takes note of the fact that Mrs. Watkins Guidry must remain available to Dustin at all hours of the day. It is noted that Mrs. Watkins Guidry has attempted independent employment, but she had to leave that position to be available to address issues with Dustin. However, Mrs. Watkins Guidry testified that she provides between five and six hours of care per day to Dustin on an average day. Accordingly, it is ordered that Plaintiffs' previous care award for twenty-four hours per day for 365 days per year is reduced to six hours per day for 365 days per year.

(Footnote omitted).

Although Mrs. Watkins expressed concern over Dustin's possible anger management issues, the record does not reflect that his anger control is a significant problem. The testimony of Dustin's wife, Sarah, who dated him for four years prior to their marriage, was that she never saw any violent outbursts. She also testified that Dustin is her own mother's favorite; she "loves him to death." In addition, Dustin's school records do not reflect any anger management problems. A former teacher noted, "He is the nicest student I have ever taught. He is respectful and usually a very hard worker."

This court will not overturn the trial court's considered determination in its well-reasoned decision that the award to Mrs. Watkins for custodial/attendant care of Dustin be reduced to six hours a day. The trial court's factual findings were based on all the evidence presented, as well as the trial judge's intimate familiarity with the long history of this case and the parties involved. We find no manifest error in the trial court's ruling on this issue.

## DISPOSITION

The trial court correctly ruled that based on the law of the case as determined in the 2006 judgment issued in *Watkins II*, the PCF was required to petition the court for a modification of its previous ruling before terminating the future custodial/attendant payments to Tina Lynette Watkins for Dustin Watkins. We affirm the trial court's award for "twenty-four (24) hour custodial/attendant care from June 1, 2011, through March 26, 2012, for an amount totaling $72,000.00 (300 days x 24 hours per day x $10.00 per hour)[,] plus interest from the date of judicial demand," as well as the award of attorney fees and costs associated with the hearing on March 26, 2012.

We also affirm the trial court's reduction of custodial/attendant care from twenty-four hours per day to six hours per day to be paid in accordance with law and prior rulings of court. All costs of this appeal are assessed against the PCF.

**AFFIRMED.**