Judgment rendered April 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,471-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CYNTHIA CANNADY                                    Applicant

versus

DR. WILLIAM YATES AND                              Respondents
MARY STELL, NP

* * * * *

On Application for Writs from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2020-2380

Honorable Jefferson Bryan Joyce, Judge

* * * * *

SANGISETTY LAW FIRM LLC              Counsel for Applicant
By: Ravi Kishan Sangisetty
    William D. Boyles
    Amanda Joy Olmsted

GACHASSIN LAW FIRM                   Counsel for Respondents,
By: Barry John Boudreaux             Dr. William Yates
                                     Mary Stell, NP

McNEW KING & LANDRY LLC              Counsel for
By: Brady Dean King, II              Defendants/Intervenors,
                                     Louisiana Patients
                                     Compensation Fund
                                     Louisiana Patients
                                     Compensation Fund Oversight
                                     Board

LIZ MURRILL                                Counsel for Respondent,
Attorney General                           State of Louisiana

LAURYN ANNELIESE SUDDUTH
OLIVIA GRACE BOUDREAUX
Assistant Attorneys General

* * * * *
Before STONE, THOMPSON, and HUNTER, JJ.

**HUNTER, J.**

In this medical malpractice action, the trial court granted a motion to compel an independent medical examination ("IME") filed by the Patient's Compensation Fund. The court also denied plaintiff's petition for a preliminary injunction to enjoin the IME. This Court granted plaintiff's writ application to review the correctness of the trial court's ruling. After further review, we conclude the judgment below does not require the exercise of this Court's supervisory authority. Accordingly, we recall the writ as improvidently granted, and we affirm the trial court's ruling.

## FACTS

On September 8, 2020, plaintiff, Cynthia Cannady, filed a medical malpractice lawsuit against defendants, Dr. William Yates ("Yates") and Mary Stell, N.P. ("Stell"). Specifically, plaintiff alleged Yates and Stell breached the standard of care by failing to timely diagnose her with spinal cord compression, and the delayed diagnosis resulted in permanent neurological damage which will require treatment for the rest of her life. The parties stipulated as to causation prior to trial, and per the stipulation, defendants did not introduce any evidence as to causation or damages.

A jury trial was held March 21-25, 2022, during which video testimony of plaintiff's treating neurologist, Dr. Donald Gervais, was played for the jury. Dr. Gervais testified as to plaintiff's future medical needs and provided an estimate of the costs. At the conclusion of the trial, the jury rendered a verdict in favor of plaintiff and awarded damages as follows: $500,000 in general damages, $250,000 in past medical expenses, and $13,500,000 in future medical expenses. On April 19, 2022, the trial court

signed a final judgment in accordance with the jury's verdict. Subsequently,

the court signed another judgment which reads, in pertinent part:

> Pursuant to La. R.S. 40:231.2(B)(2), the liability of Defendants,
> Dr. William Yates and Mary Stell, NP, is reduced to the
> statutory cap of $100,000.00 per Defendant, for a total of
> $200,000.00, with the remainder to be paid in accordance with
> La. R.S. 40:1231.2(B)(3)(a).[1]

Since the judgment exceeded $100,000, the Patient's Compensation Fund

("PCF") is responsible for paying the remainder of plaintiff's award.

On November 16, 2022, the parties filed a "Partial Satisfaction of

Judgments." Within this pleading, plaintiff acknowledged satisfaction of the

trial court's judgments as to the amounts awarded, including general

damages, past attendant care, past medical care expenses or costs, court

costs, and judicial interest. Plaintiff also reserved her right to seek payments

for medical care and related benefits incurred after April 19, 2022. The PCF

acknowledged plaintiff's reservation of rights and asserted the following:

> Nothing in this Partial Satisfaction of Judgment alters or waives
> Cynthia Cannady's right to collect or otherwise seek
> reimbursement for future medical care and related benefits from
> the Patient Compensation Fund in accordance with the verdict
> and related judgments rendered in this matter to be submitted,
> processed, and paid in accordance with the Louisiana Medical

---

[1] La. R.S. 40:1231.2(B) provides, in pertinent part:

\*\*\*

> (2) A health care provider qualified under this Part is not liable for an
> amount in excess of one hundred thousand dollars plus interest thereon
> accruing after April 1, 1991, and costs specifically provided for by this
> Paragraph for all malpractice claims because of injuries to or death of
> any one patient[.]

> (3) (a) Any amount due from a judgment or settlement or from a final
> award in an arbitration proceeding which is in excess of the total
> liability of all liable health care providers, as provided in Paragraph (2)
> of this Subsection, shall be paid from the patient's compensation fund
> pursuant to the provisions of R.S. 40:1231.4(C).
> \*\*\*

2

Malpractice Act and any applicable provisions including, but not limited to, La. Admin Code Tit 37, Part III, § 1901, et seq.

Soon thereafter, plaintiff sought to renovate her home to make it mobility assessible. On December 10, 2022, Micah Shelton, with Green Hammer, LLC, a licensed contractor, issued an estimate for the cost of handicap accessibility and scooter mobility renovations to plaintiff's home, estimating the renovations would cost $207,945.97. On the same date, Shelton issued an invoice to plaintiff amounting to $13,565.00, which also contained a fee schedule, and a check in that amount was issued to Green Hammer, LLC, on December 14, 2022.

On December 12, 2022, plaintiff sent a "Notice of Claim for Future Medical Care and Related Benefits" to the PCF's Board, pursuant to La. Admin. Code Tit. 37, Pt. III, §1909. Within this notice, plaintiff requested payment in the amount of $496,179.09, for expenses for 2023, including, but not limited to, handicap renovations, attendant care, nursing care, a handicap accessible van, and temporary medical transportation, all of which were recommended in Dr. Gervais' future medical needs report introduced at trial. On December 16, 2022, plaintiff received an e-mail in response to her notice, which reads as follows in pertinent part:

\*\*\*

Allow me to remind everyone the PCF pays medicals as incurred. Providers normally bill us directly, which allows us to have the bills fee scheduled pursuant to Title 37's promulgation.

We require an actual physician's order or script for attendant care, nursing care, DVE orders and vehicle requests. The expert report, which I do not have in our file, does not meet the criteria.

\*\*\*

Ms. Cannady's claim for future medicals has been assigned to Torey Powers and he has forwarded her proper letters and ID cards to present at her medical appointments. I encourage Ms.

3

Cannady to have her known providers contact Mr. Power
directly to set up direct billing[.]

***

On January 4, 2023, the PCF denied plaintiff's claim via e-mail through its counsel and informed plaintiff her notice was premature and would not be forwarded to General Counsel. On January 14, 2023, Dr. Gervais signed 26 prescriptions/orders for plaintiff's equipment, care, and treatment; the prescriptions and orders were forwarded to the PCF.

On January 26, 2023, plaintiff's counsel was informed via telephone the PCF was questioning the causation between the injuries she suffered and the future medical treatments awarded to her by the jury pursuant to Dr. Gervais' medical report.[2] Subsequently, counsel for the PCF sent plaintiff another e-mail which reads, in relevant part:

***

[T]he "orders" are signed, electronically. However, many are vague and the need for house renovations, etc. *** are not specific.

***

Given all this, the Fund would like to exercise its right to have an [independent medical examination ("IME")] conducted. As soon as a physician is retained, we will comply with §1231.3 by providing the proper notice[.][[3]]

_____

[2] Thereafter, plaintiff sent an e-mail explaining the parties had stipulated as to causation. Additionally, plaintiff alleged she subsequently contacted at least 14 potential attendant care providers to determine if any of them could accept payment from the PCF after the services were rendered rather than on the date of service. Ultimately, Body and Soul, Inc. was the only attendant care provider who agreed to provide services, and the PCF agreed to pay after the services were rendered. According to plaintiff, a representative from Body and Soul informed her the company was prepared to move forward with assessing their ability to service plaintiff; however, the company was constrained due to correspondence from the employee handling the claim on behalf of the PCF, which expressed the following: (1) the PCF would be taking bids for plaintiff's attendant care, and (2) the PCF needed more clarity from plaintiff's physicians as to the amount and types of services needed.

[3] According to plaintiff, on February 10, 2023, the PCF's counsel informed her, via telephone, some home health agencies had reported they were experiencing difficulties with the home health orders due to "vagueness," and the PCF would have difficulty assessing and paying for any of the requested medical expenses and related benefits until the IME is performed.

4

On March 6, 2023, counsel for the PCF sent plaintiff an e-mail requesting her availability for an IME between March through May, to be conducted by a Shreveport orthopedist, Dr. Pierce Nunley.

On March 15, 2023, the PCF filed a "Motion to Compel a Physical Exam Pursuant to La. Admin. Code Title 37, PT III, § 1911."[4]  The PCF prayed for an order compelling plaintiff "to submit to a medical examination to determine her continued need for future medical care and related benefits, and the scope and nature thereof, that might be necessitated by the medical negligence of Dr. William Yates."  Within the memorandum, the PCF acknowledged the jury's determination concerning plaintiff's future care: however, as set forth in the "Partial Satisfaction of Judgment," the PCF asserted plaintiff's claims must be "submitted, processed, and paid in accordance with the Louisiana Medical Malpractice Act" ("MMA") and related regulations."  The PCF also cited La. Admin. Code Tit. 37, Pt. III, § 1907(A), which reads as follows in pertinent part:

> A patient, who is deemed to be in need of future medical care and related benefits pursuant to a final judgment issued by a court of competent jurisdiction…may make a claim to the fund through the board for future medical care and related benefits as incurred by the patient and made necessary by the health care provider's malpractice.

---

[4] 37 La. Admin. Code Pt III, 1911 provides, in pertinent part:

A. The fund shall be entitled to have a patient submit to a physical or mental examination, by a health care provider of the fund's choice, from time to time, to determine the patient's continued need of future medical care and related benefits, or the level of medical care needed[.]
***

Alternatively, the PCF prayed for a declaratory judgment providing it is not compelled to reimburse or pay for any medical expenses until an IME takes place and the proper claim procedure has been followed and satisfied.[5]

Following a hearing, the trial court signed an order which reads as follows:

***

After considering the parties' briefs, argument, the law, and for the reasons more fully set forth in open court, this Court finds that the Motion to Compel an IME brought by the PCF is well founded.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Motion to Compel an IME is hereby granted and Plaintiff's Preliminary Injunction to enjoin an IME is denied. Plaintiff, Cynthia Cannady, is therefore hereby ordered to submit to an IME to be conducted in accordance with the Louisiana Medical Malpractice Act including, but not limited to, *LSA-R.S.* 40:1231.3(G) and *La. Admin Code, Tit. 37, Part III, §1911.*

---

[5] In response, plaintiff filed a "Petition for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction and Declaratory Relief." The petition was filed in the Nineteenth Judicial District Court, East Baton Rouge Parish, because the PCF is a state agency, and plaintiff alleged the "unlawful request for an IME," occurred in East Baton Rouge Parish, pursuant to La. R.S. 13:5104(A). On March 22, 2023, the Nineteenth Judicial District Court issued a temporary restraining order, temporarily enjoining the PCF from performing an IME on plaintiff from the date of the order and continuing for a period of ten days after the signing of the order.

Subsequently, the PCF filed an "Exception of Venue and No Cause or Right of Action and in Opposition to Plaintiff's Motion for Preliminary Injunction" and a memorandum in support, in the Nineteenth Judicial District Court. The PCF asserted jurisdiction was proper in the Fourth Judicial District Court pursuant to La. R.S. 40:1231.3(E)(1). Following a hearing, the trial court granted the PCF's exception of improper venue, and the matter was transferred to the Fourth Judicial District Court. The respective parties adopted their previous pleadings filed in the Nineteenth Judicial District Court, and a hearing was set for June 14, 2023.

Because plaintiff's petition contained a constitutional challenge, the 19th Judicial District Court served the attorney general with a copy of plaintiff's petition and rule to show cause. However, plaintiff did not technically challenge the constitutionality of La. R.S. 40:1231.3(G), but rather the constitutionality of the actions of the PCF as applied to her.

On May 19, 2023, a Rule to Show Cause was filed and Assistant Attorney General ("AAG") Lauryn Sudduth was ordered to appear at the Ouachita Parish Courthouse concerning this matter. On June 5, 2023, a "Louisiana Attorney General Memorandum In Support of the Constitutionality of La. R.S. 40:1231.3(G)" was filed. Within this memorandum, the AAG prayed that the trial court refrain from ruling on the constitutionality of the challenged statute due to the claim not being properly brought before the court. The AAG also noted she did not intend to appear for oral argument and submitted the memorandum on the merits in lieu of oral argument.

6

Plaintiff filed an application for supervisory review, and by order dated October 5, 2023, this Court granted plaintiff's application.

**DISCUSSION**

Plaintiff contends the trial court violated her constitutional right to access to the courts and due process by requiring her to undergo an IME. She argues the parties stipulated to causation prior to trial, and by requesting an IME, the PCF is seeking to redetermine whether her condition was caused by medical malpractice. She maintains Art. I § 1 of the state Constitution provides, "[A]ll government . . . is instituted to protect the rights of the individual and for the good of the whole. Its only legitimate ends are to secure justice for all . . . protect the rights, and preserve the happiness and general welfare of the people." Plaintiff further takes issue with the PCF's claim that it is acting as a prudent administrator by requesting an IME; however, the administrative code does not define the term, "prudent administrator," and the trial court violated her constitutional rights by making "the PCF the sole authority on what it means to act as a 'prudent administrator.'"

La. R.S. 40:1231.3 provides, in relevant part:

***

B. (1) "Future medical care and related benefits" for the purpose of this Section means all of the following:

(a) All reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, incurred after the date of the injury up to the date of the settlement, judgment, or arbitration award.

(b) All reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provisions of such services, after the date of the

7

injury that will be incurred after the date of the settlement, judgment, or arbitration award.

(2) "Future medical care and benefits" as used in this Section shall not be construed to mean non-essential specialty items or devices of convenience.

C. Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits that will be incurred after the date of the response to the special interrogatory by the jury or the court's finding *** the patient may make a claim to the patient's compensation fund through the board for all future medical care and related benefits directly or indirectly made necessary by the health care provider's malpractice unless the patient refuses to allow them to be furnished.

***

A future medical care award is not a lump sum award payable immediately to a plaintiff. Rather, a future medical care award will be paid out by the PCF, as expenses are incurred. *Watkins v. Lake Charles Mem. Hosp.*, 13-1137 (La. 3/25/14), 144 So. 3d 944; *Hanks v. Seale*, 04-1485 (la. 6/17/05), 904 So. 2d 662; *Hall v. Brookshire Bros, Ltd.*, 02-2404 (La. 6/27/03), 848 So. 2d 559. A patient, who is deemed to be in need of future medical care and related benefits pursuant to a final judgment issued by a court of competent jurisdiction may make a claim to the PCF for future medical care and related benefits as incurred by the patient and made necessary by the health care provider's malpractice. 37 La. Admin. Code Pt III, 1907; *Jones v. ABC Ins. Co.*, 19-141 (La. App. 5 Cir. 1/29/20), 290 So. 3d 317.

In *Kelty v. Brumfield*, 633 So. 2d 1210, 1216-19 (La. 1994), the Louisiana Supreme Court reviewed the history of the provisions set forth in the MMA. The Court described, at length, the function of the PCF with regard to future medical care and related benefits as follows:

[The MMA] alone clearly indicates that the agency has exclusive jurisdiction of future medical and related care claims, and this meaning becomes even more evident when other aspects of the legislation are taken into consideration. Third, the same agency that is granted the authority to receive and evaluate claims, and to pay, settle or reject them, is also vested with full powers to assure the cost-effectiveness of claims adjustment and the fiscal soundness of the PCF. **The agency has the power to require a medical inspection of the need of each claimant for medical care benefits every six months without a court order and more often with a court order.**

\*\*\*

**In establishing the administrative program, the legislature gave statutory jurisdiction to the responsible agency for the purpose of granting, denying, or settling medical and related care services claims**. **Along with this initial decision-making responsibility the legislature gave clear authority to the agency to supervise the administration of continuing claims.**

\*\*\*

**Finally, the statutory provisions referring to the courts clearly indicate that they are not vested with original jurisdiction or decision making responsibility over future medical care claims. The courts are authorized to perform two limited functions: (i) certification of whether a malpractice victim is a patient in need, i.e., whether the victim's damages consumed the cap limits without affording her compensation for all actual medical expenses necessitated by the malpractice; and (ii) random and ephemeral housekeeping matters, viz., the court is granted a very limited continuing jurisdiction to award attorney fees when the PCF fails to pay timely, and order more frequent physical examinations of a patient, upon reasonable cause.**

**Given the minor, supporting role assigned to the courts, the expertise expected of the agency, the confidence the legislature has placed in the agency, and the active decision-making, administrative, and supervisory roles the agency is required to play, permitting courts throughout the state to conduct their own litigation involving future medical care claims would conflict with and hinder the regulatory scheme rather than supplement or promote its objectives**. Indeed, the legislative scheme would be absurd and unworkable if courts were authorized to redetermine de novo reasonable, non-arbitrary decisions made by the agency with respect to the initial disposition of claims, the continuing need of patients for medical care benefits, the fiscal ability of the PCF to pay claims in full, the percentage of pro rata reduction of claim payments required to maintain the PCF's fiscal stability, and the level of surcharges necessary to maintain the PCF's actuarial soundness. Because all of these determinations are interrelated,

9

the legislature clearly intended to assign the original decision-making function with respect to them to the expert administrative agency. Consequently, we conclude that the legislature intended to eliminate all judicial power in initial decision making or supervision over medical and related care claims and to vest such exclusive jurisdiction in the agency legislatively assigned to administer the PCF, subject only to court review of the agency's actions pursuant to well established principles of judicial review.

(Internal footnote omitted; citations omitted; italicized emphasis in original; bold emphasis added).

Further, the more specified duties, obligations, and responsibilities of the PCF and its oversight board are set forth in the Title 37 of the Louisiana Administrative Code. 37 La. Admin. Code Pt III, 1905, provides:

A. The fund shall provide and/or fund the cost of all future medical care and related benefits in the amounts provided herein, after the date of the accident and continuing as long as medical or surgical attention is reasonably necessary, that are made necessary by the health care provider's malpractice, pursuant to a final judgment issued by a court of competent jurisdiction or as agreed to in a settlement reached between a patient and the fund, unless the patient refuses to allow the future medical care and related benefits to be furnished.

B. The fund acknowledges that a court is required neither to choose the best medical treatment nor the most cost-efficient treatment for a patient. The intent of Chapter 19 is to distinguish between those devices which are reasonably necessary to a patient's treatment and those which are devices of convenience or non-essential specialty items for a patient, and to provide for the maximum allowable reimbursement for those necessary future medical care and related benefits. However, the fund shall not pay for repairs for or replacement of durable medical equipment, vehicles or residential modifications or renovations.

C. **Pursuant to the Act, the board has been, expressly and/or implicitly, vested with the responsibility and authority for the management, administration, operation, and defense of the fund and, as a prudent administrator, it must insure that all future medical care costs and related benefits are reasonable and commensurate with the usual and customary costs of such care in the patient's community.** Therefore, the amount paid by the fund for future medical care and related benefits shall be the lesser of the amount billed for

10

said care or benefit or the maximum amount allowed under the reimbursement schedule.

D. Payments for future medical care and related benefits shall be paid by the fund without regard to the $500,000 limitation imposed in R.S. 40:1299.42 [now R.S. 40:1231].

(Emphasis added).

We have reviewed this record, the relevant statutory provisions, regulatory guidelines, and jurisprudence. We find no merit to plaintiff's argument the PCF's request for her to submit to an IME is a violation of her constitutional rights. The crux of plaintiff's contention is that the PCF is seeking to circumvent the jury's award and the final judgment by relitigating the issue of damages, and ultimately, causation. However, a review of this record reveals the PCF has acknowledged the jury's verdict and award in each of its pleadings and is merely seeking to fulfill its obligation to "insure that all future medical care costs and related benefits are reasonable and commensurate with the usual and customary costs of such care in the patient's community." There is no showing the PCF is attempting to deprive plaintiff of her entitlement to future medical care and related benefits or deny her access to the courts.

Our review of this record reveals this dispute hinges on plaintiff's failure to adhere to the proper procedures as set forth in the MMA and the Administrative Code. Specifically, in plaintiff's December 12, 2022 "Notice for Future Medical Care and Related Benefits," she requested a lump sum payment for benefits in the amount of $496,179.09. Such lump sum payment is contrary to La. R.S. 40:1231.3 and 37 La. Admin. Code Pt III, 1907(A), which specifically states patients may make a claim to the fund "for future medical care and related benefits *as incurred by the patient*." It

11

is axiomatic plaintiff made an extensive claim, and as statutorily required, the PCF is seeking to be a prudent administrator of the fund by requiring plaintiff to follow the proper procedures by submitting claims as her expenses are incurred. Plaintiff's arguments lack merit.

Plaintiff also contends the trial court erred in denying her preliminary injunction to enjoin an IME. Plaintiff concedes the PCF is entitled to conduct an IME "from time to time" to "determine the patient's *continued* need of future medical care and related benefits[.]" La. R.S. 40:1231.3(G) (emphasis added). She argues an IME is inappropriate at this time, and requiring one at this juncture violates the MMA.

La. R.S. 40:1231.3(G) provides:

> The patient's compensation fund shall be entitled to have a physical examination of the patient by a physician of the patient's compensation fund's choice from time to time for the purpose of determining the patient's continued need of future medical care and related benefits, subject to the following requirements:
>
> (1)(a) Notice in writing shall be delivered to or served upon the patient or the patient's counsel of record, specifying the time and place where it is intended to conduct the examination.
> ***
> (2) Such examination shall be by a licensed medical physician or chiropractic physician licensed under the laws of this state or of the state, parish, or county wherein the patient resides.
> ***
> (5)(a) Examinations may not be required more frequently than at six months intervals except that, upon application to the court having jurisdiction of the claim and after reasonable cause shown therefor, examination within a shorter interval may be ordered.
> (b) In considering such application, the court should exercise care to prevent harassment to the patient.
> ***

Based on our review, the trial court's judgment in accordance with the jury's verdict was signed April 19, 2022; plaintiff submitted her notice of claim on December 12, 2022. By then, more than six months had elapsed

from the time Dr. Gervais report and recommendations were submitted at trial. Plaintiff has failed to prove the PCF's request for an IME was unreasonable or outside the scope of the PCF's statutory responsibility. Plaintiff has also failed to meet her burden of proving she will suffer irreparable injury by submitting to an IME. Consequently, we find the trial court did not err in granting the PCF's motion to compel an IME and denying plaintiff's preliminary injunction to enjoin the IME. We shall recall the writ as improvidently granted.

## CONCLUSION

For the foregoing reasons, we recall this writ as improvidently granted and affirm the ruling of the trial court. Costs are assessed to plaintiff, Cynthia Cannady.

**WRIT RECALLED; AFFIRMED.**